# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

DIJO, INC.                                                                                                PLAINTIFF

V.                                                                                                   NO: 2:00CV113

HILTON HOTELS CORP., PARK PLACE
ENTERTAINMENT CORP., GRAND CASINOS,
INC., BL DEVELOPMENT CORP. AND BL
RESORTS I, LLC,                                                                                     DEFENDANTS

## ORDER

This cause comes before the court on defendants' motion to exclude the testimony [181-1] and supplemental report [207-1] of expert witness Kenneth Barber, who was retained by plaintiff to provide testimony regarding the issue of damages. Barber is a licensed real estate appraiser with a PHd in economics who has performed more than four hundred appraisals of hotels and motels. In seeking to exclude Barber's testimony, defendants argue that this expert improperly relied upon a gross, rather than net, valuation method in this case. During his deposition, Barber testified that the market value of the Comfort Suites Hotel ("the hotel") as of October 24, 2004 would have been $ 8 million. Barber stated that this $ 8 million figure represented the amount that a willing buyer would pay for the hotel as of that date and did not take into consideration costs which plaintiff would have incurred in building the hotel.

Defendants argue that Barber's use of a gross, rather than net, valuation figure contravenes established Mississippi law. Mississippi recognizes that profits which would have been realized had the contract been performed may be recovered as damages for its breach provided they are susceptible of being ascertained with reasonable certainty. *McDaniel Bros.*

*Const. Co. v. Jordy*, 195 So.2d 922 (Miss.1967); *U. S. Finance Co. v. Barber*, 247 Miss. 800, 157 So.2d 394, 398 (1963). It is well established that, in calculating loss of future profits, such loss is that of net profits as opposed to gross profits. *Lovett v. E.L. Garner, Inc.*, 511 So.2d 1346, 1353 (Miss. 1987) (citing Dunn, *Recovery of Damages For Lost Profits 3d,* § 6.1 (1987)); *see also Cook Industries, Inc. v. Carlson,* 334 F. Supp. 809, 816 (N.D. Miss. 1971).

In response, plaintiff emphasizes that the $ 8 million valuation arrived at by Barber does not represent the overall damages sought by plaintiff in this case. To the contrary, plaintiff argues that the "overall damages suffered by plaintiff is a figure which is calculated by taking the value of the hotel as a going concern, subtracting its construction costs, and adding future profits and the reduction in any mortgage due on that property, for the length of time plaintiff would have held the hotel, to the difference between the market value and construction costs." In support of its response, plaintiff has submitted a supplemental report prepared by Barber which specifically takes into account the costs which would have been incurred in building the hotel in arriving at a damages figure. Defendants have moved to exclude this supplemental report, arguing that Barber only sought to revise his figures after they pointed out the blatant errors in his original calculations.

While the record does not permit a definitive conclusion in this regard, it may be true that defendants are correct and that plaintiff only sought to provide the supplemental report after errors in Barber's original calculations were pointed out by defendants.[1] Even assuming this is true, however, the court sees no reason to discourage plaintiff from recognizing errors in its own

---

[1] On the other hand, it is arguable from reading Barber's deposition that he was merely testifying about the fair market value of the hotel rather than providing a "bottom line" damages estimate.

damages calculations and taking steps to correct them. This is particularly true considering that the supplemental report was provided to defendants in December, 2004, and defendants have accordingly had several months to respond to these revised calculations in anticipation of trial.

The court will therefore permit plaintiff to submit the supplemental report prepared by Barber although, as discussed *infra*, defendants raise serious objections regarding certain aspects of this report. The nature of Barber's supplemental report, and defendants' objections thereto, are set forth in defendants' brief in support of their motion to exclude that report:

> In his supplemental report, Mr. Barber subtracted $5.8 Million in construction and start-up costs from his $8 Million valuation to arrive at a net loss to DIJO of approximately $2.2 Million. Barber, however, did not stop there. He then made new calculations regarding DIJO's alleged lost profits from the date of start-up in 1999 until his assumed sale date of October 10, 2004. Those damages, which Barber calculated at $2,300,237.00, were then added to the $2.2 Million loss DIJO theoretically would have incurred had it sold the Hotel on October 10, 2004.
>
> As a result, Mr. Barber calculated damages as of the October 10, 2004 sale date of $4,500,237.00. Again, however, Mr. Barber did not stop there. To further inflate DIJO's damage claim, Mr. Barber assumed additional lost profits of $2,012,697.00 for a second five year period from 2005 through 2009. Mr. Barber, of course, did not explain how DIJO could suffer a $2.2 Million loss based upon a sale of the Hotel on October 10, 2004, and then recover an additional five years of lost profits after the sale date. The reason, of course, is that there is no plausible explanation that would be consistent with Mississippi law concerning the recovery of economic damages. Mr. Barber's damage estimate clearly amounts to double recovery and should be excluded from evidence. Mr. Barber cannot have it both ways. He cannot calculate a loss to DIJO based upon a sale of the Hotel in 2004, and then calculate lost profits through 2009. As a result, the estimated lost profits of $2,012,647.00 from 2005 through 2009 simply cannot be recovered under Mississippi law.

In the court's view, defendants have raised what appear to be entirely valid objections to certain methodologies used by Barber in his supplemental report. [2] Indeed, it seems nonsensical that

---

[2] Defendants also object to Barber's alleged failure to take into account the unpaid principal amounts on the hypothetical mortgage financing the hypothetical hotel in this case. It is

Barber would seek to assess damages based upon a hypothetical sale of the hotel in October, 2004, and thereupon assess additional lost profits on that same hotel from 2005 to 2009. Clearly, plaintiff would have earned no profits on the hotel between 2005 and 2009 if it had already been sold in October 2004.

Faced with this very serious and seemingly valid objection to Barber's supplemental report, plaintiff has responded with a brief which fails to address defendants' objections in any material respect. In this "response," plaintiff notes once again Barber's professional credentials and repeats the conclusions set forth in his supplemental report. The only thing approaching analysis in plaintiff's response are vague arguments that Barber's supplemental report will "assist the trier of fact" within the meaning of Fed. R. Evid. 702 and discussions of authority totally unrelated to the present case. Nowhere in its response does plaintiff even attempt to explain how DIJO could recover profits between 2005 and 2009 on a hotel which had been sold in October, 2004.

In light of the foregoing, the court gave very serious consideration to excluding Barber outright as an expert witness under *Daubert*, and it reserves the right to do so at a later date if circumstances so require.[3] At the same time, it is apparent that defendants only raise objections

---

not clear to this court to what extent Barber failed to consider such unpaid mortgage debt in his calculation of the hypothetical sale in October, 2004. It is further unclear to this court to what extent such debt, which would presumably be fully secured, would actually reduce profits on the sale of the hotel. Therefore, the court issues no holding on this issue at the present time, but the court will consider arguments in this regard at trial.

[3]In considering expert testimony, this court has an obligation to ensure that such testimony "is not only relevant, but reliable. " *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed.R.Evid. 402, but also in the sense

4

to a portion of the methodology used by Barber in his supplemental report, and many of the methods used by Barber appear to be standard real estate appraisal techniques, as to which this witness clearly has very significant expertise. While the court is tempted to do so, it will refrain at this juncture from "throwing the baby out with the bathwater" and excluding Barber's testimony entirely. This is not a case in which an expert seeks to rely entirely on "junk science" which lacks reliability under *Daubert*. It further appears that, by excising the objectionable methodologies used by Barber, the court will be left with appraisal and lost profits testimony which will no doubt include estimates higher than those submitted by defense experts, but which will not be "unreliable" as a matter of law within the meaning of *Daubert*.[4]

---

that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue. *Daubert,* 509 U.S. at 591-92, 113 S. Ct. 2786, 125 L. Ed. 2d 469. Put differently, Rule 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 592, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469.

As to reliability, the Supreme Court has provided five, non-exclusive factors for to consider: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert,* 509 U.S. at 593- 94, 113 S.Ct. 2786, 125 L.Ed.2d 469. The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire,* 526 U.S. at 150-51, 119 S.Ct. 1167, 143 L.Ed.2d 238. The party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are reliable, but need not show that the expert's findings and conclusions are correct. *Moore,* 151 F.3d at 276.

[4]Moreover, it may (or may not) be the case that Barber intended to use the valuation of the hypothetical October, 2004 sale as a basis for estimating the value of a hypothetical sale of the hotel in 2009. If so, this would lessen somewhat the apparent magnitude of the error made by Barber, but it would still not constitute a reliable valuation method for *Daubert* purposes. Clearly, the valuation of a hotel in 2004 will not be identical to its valuation five years later, and plaintiff has not argued otherwise. From reading Barber's supplemental report, it appears that this expert has been guilty of sloppiness in his calculations rather than the rank incompetence suggested by defendants. For this reason, the court is not inclined to grant the more severe remedy of complete exclusion sought by defendants, at least at this juncture.

In light of the foregoing, the court holds that, by failing to respond to the specific objections set forth in defendant's motion to exclude Barber's supplemental report, plaintiff has confessed the validity of those objections. The court further holds that, since DIJO has elected to submit profit calculations based upon a hypothetical sale of the hotel in October, 2004, it may not seek to recover lost profits which allegedly would have been incurred after this date. This appears to be nothing more than common sense. If past experience is any indication, plaintiff may well seek to submit yet another supplemental report prepared by Barber, perhaps to calculate lost profits on a hypothetical sale of the hotel in 2009, rather than 2004. While the court has been indulgent in permitting plaintiff to submit supplemental reports, this indulgence is now at an end. If plaintiff had any revised calculations to submit in light of the objections raised by defendants, it clearly should have submitted them in its response to the motion to exclude the supplemental report.

In addition, limiting the proof at trial to lost profits allegedly incurred up until October, 2004 establishes what this court believes to be reasonable limitations upon the damages sought by plaintiff. This case involves the valuation of a hotel which never existed, and defendants have argued in a separate motion that this court should exclude *all* evidence of lost profits as unduly speculative. While the court is not inclined to go this far, it does conclude that limiting proof of lost profits in the manner set forth in this order will serve to prevent the testimony at trial from entering the realm of pure conjecture. Indeed, attempting to divine the profitability of a hotel which never existed in a hypothetical 2009 Tunica casino marketplace would arguably approach pure guesswork, particularly considering the mercurial nature of the gaming marketplace.

It appears that, absent the claimed lost profits between 2005 and 2009, Barber will testify

6

that DIJO has incurred a total loss of approximately $ 4.5 million dollars, covering the $ 2.3 million in lost profits between 1999 and 2004 and also including the $2.2 million in lost profits on the hypothetical October, 2004 sale.  It is noteworthy that even this reduced figure is slightly greater than DIJO's original damages figure of $ 4.3 million arrived at by plaintiff expert witness Dennis Gemberling prior to the first trial in this matter.  Defendants also note that, in its pre-discovery of core information submitted in June, 2000, plaintiff originally submitted a damages estimate of only $1.15 million dollars.  The court admits to some skepticism regarding the manner in which the hypothetical hotel in this case has become far more profitable in plaintiff's eyes with the passage of time.  At this juncture, the court tentatively views this $4.5 million dollar estimate as the absolute maximum recovery which might be supported by the evidence in this case, although this conclusion is obviously subject to revision (either upward or downward), depending upon the manner in which the proof develops at trial.

In light of the foregoing, it is ordered that defendants' motion in limine [181-1] to exclude Barber as a witness is denied at this juncture, and defendants' motion in limine to exclude Barber's supplemental report [207-1] is granted in part and denied in part.

**SO ORDERED** this 16th day of June, 2005.

    **/s/ Michael P. Mills**
    **UNITED STATES DISTRICT JUDGE**